IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ADRIAN KERMIT DUNCAN, #198585, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:16-CV-191-MHT |
| ) | |
| JEFFERSON S. DUNN, et al., ) | |
| ) | |
| Defendants. ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I. INTRODUCTION

This cause of action is pending before the court on a 42 U.S.C. § 1983 complaint filed by Adrian Kermit Duncan ("Duncan"), a state inmate currently incarcerated at the Limestone Correctional Facility ("Limestone"). In the instant complaint, Duncan challenges actions that occurred during his prior term of confinement at Easterling Correctional Facility ("Easterling") after his transfer from Bullock Correctional Facility ("Bullock"). Specifically, Duncan maintains that the defendants, who are correctional officials employed throughout the prison system, engaged in a conspiracy to ensure that he did not receive adequate protection while confined at Easterling. He also makes allegations with respect to his service as a witness to the murder of an inmate at Bullock and claims that his transfer to Easterling placed his life in jeopardy because the inmates charged with the murder were housed in disciplinary segregation at Easterling. Duncan further claims that one of the defendants, Lieutenant Timothy Scott, ordered "a hit" on his life due to a statement he provided investigators implicating this defendant in the inmate's murder.

On April 13, 2016, Duncan filed a motion for preliminary injunction in which he seeks a transfer from Easterling to "protective custody within the A.D.O.C. away from defendants and 24/7 death threats he [is] receiving from seg. Inmates at Easterling . . . and also to assure . . . the needed access/materials to properly litigate [this] civil action." Doc. 25 at 1. The motion for preliminary injunction addresses relief related to Duncan's confinement at Easterling.

The defendants filed responses to the motion for preliminary injunction. In their responses, the defendants argue that the preliminary injunctive relief sought by Duncan regarding protection is now moot as he has been transferred to Limestone and is currently confined in a single cell in administrative segregation. Moreover, the documents and pleadings filed by Duncan demonstrate that he had appropriate access to the court during his incarceration at Easterling.

## II.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Duncan demonstrates "each of the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Id.*; *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034-1035 (11th Cir. 2001); *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176

(11th Cir. 1983). "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's*, 147 F.3d at 1306 (internal quotations omitted) (citing *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989); *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's request for injunctive relief, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir. 1990); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

### III.  DISCUSSION

In addressing Duncan's claims regarding the need for transfer from Easterling and placement in protective custody, the defendants argue that the request for injunctive relief has effectively been met by his transfer to Limestone and placement in a single cell in administrative segregation. Kristen Bias, a Classification Specialist employed at Limestone, provides the following relevant information:

3

> Inmate Adrian Duncan, AIS# 198585, claims in a written statement provided to correctional staff at Limestone Correctional Facility that, on August 6, 2015, he witnessed the murder of another inmate, Clementa Curry, at Bullock Correctional Facility. Inmate Duncan further suggests that he recorded this incident on cell phone video [which Duncan now acknowledges is "a fabricated story made up by complainant . . . seeking leverage" against correctional officials, Doc. No. 1 at 8-9], and that the death of Inmate Curry was due to a "hit" being placed on Inmate Curry by a Correctional Lieutenant. Inmate Duncan states that he provided a written statement to authorities regarding the death of Inmate Curry, and alleges that this statement was then shown to numerous other inmates to include one of the alleged perpetrators. Inmate Duncan claims that, as a result, there is now a "hit" out on him by order of numerous Security Threat Groups, to include the Crips, the Bloods, the Mexican Mafia, and the Gangster Disciples. Inmate Duncan further claims that members of these groups have strong ties to Alabama Department of Corrections (ADOC) staff, to include correctional staff at the facility level and member(s) of the Investigation and Intelligence Division. Inmate Duncan alleges that there have already been numerous unsuccessful attempts by members of these groups to physically harm him or take his life.
> On 5/6/2016, a Reclassification Hearing was held to determine Inmate Duncan's placement based on the allegations he made as detailed above. Inmate Duncan has claimed to have a vast number of unknown enemies within the ADOC inmate population. He has also implicated the involvement of ADOC staff members, and has claimed that numerous attempts have already been made on his life. As such, the Classification Committee determined that the safest environment to ensure Inmate Duncan's personal safety was placement in Administrative Segregation at Limestone Correctional Facility. While Limestone Correctional Facility does have a Protective Custody (PC) Unit, the PC Unit is an open bay housing unit and the inmates assigned to this unit are in contact with each other throughout the day. Placement in Administrative Segregation provides for protective custody in a single cell environment, which is the most effective way to ensure Inmate Duncan's safety from unknown enemies.

Doc. 95-1 at 1-2.

Insofar as Duncan seeks preliminary injunctive relief regarding physical access to the law library and legal materials at Easterling, the record in this case belies his claim that his access has been insufficient. Duncan filed this case in mid-March of 2016 while

4

incarcerated at Easterling and remained incarcerated at this facility for approximately two months after initiation of this case until his transfer to Limestone. During these two months, Duncan filed a motion to amend, a memorandum brief in support of his complaint, and the instant motion for preliminary injunction. A review of the docket demonstrates that Duncan filed all documents necessary to the prosecution of his claims and this case remains pending before the court on the complaint, as amended. It is therefore clear that Duncan has failed to establish the requisite injury for relief, injunctive or otherwise, on an access to court claim. *Lewis v. Casey*, 518 U.S. 343, 350 & 356–57 (1996) (holding with respect to access claims that "it is [the] capability [to bring nonfrivolous legal claims], rather than the capability of turning pages in a law library, that is the touchstone").

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Duncan has failed to demonstrate a substantial likelihood of success on the merits of his claims. Duncan likewise fails to establish a substantial threat that he will suffer the requisite irreparable injury absent issuance of a preliminary injunction. As previously determined, there is no threat of an injury with respect to Duncan's allegation regarding a lack of access to the court during his previous term of incarceration at Easterling. With respect to his request for protection directed towards officials at Easterling, the relief requested is moot as he is no longer incarcerated at this facility. Moreover, correctional officials have placed Duncan in a single cell in administrative segregation at Limestone "which is the most effective way to ensure [his] safety from unknown enemies." Doc. 95-1 at 2. The third factor, balancing potential harm to the parties, weighs much more heavily in favor of the defendants as issuance of the requested

5

injunction would interfere with the ability of correctional officials to determine the manner in which to provide security for inmates confined within the prison system. Finally, the public interest element of the equation is, at best, a neutral factor at this juncture. Thus, Duncan has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of a preliminary injunction.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by the plaintiff (Doc. 25) be DENIED.

2. This case be referred back the undersigned for additional proceedings.

It is further ORDERED that on or before August 10, 2016 the plaintiff may file objections to the Recommendation. The plaintiff must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

Done this 27th day of July, 2016.

                              /s/ Gray M. Borden
                        UNITED STATES MAGISTRATE JUDGE